STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. FRANK PETILLO, DEFENDANT-APPELLANT.

Argued April 10, 1972—Decided July 5, 1972.

166

*Mr. Daniel E. Isles* argued the cause for appellant (*Messrs. Querques, Isles* and *Weissbard,* attorneys; *Mr. Harvey Weissbard,* on the brief).

*Mr. Michael H. Stieber,* Assistant Prosecutor, argued the cause for respondent (*Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney).

The opinion of the Court was delivered by

FRANCIS, J.  Indictments were returned against defendant Petillo charging him with bookmaking and keeping a place to which persons might resort for gambling in violation of *N. J. S. A.* 2A:112–3. Upon trial he was convicted of both offenses. His appeal therefrom was certified by this Court before argument in the Appellate Division.

The evidence which provided the primary basis for the conviction was obtained by a search and seizure made at defendant's home pursuant to a search warrant issued by a Superior Court, Law Division, judge. The evidence seized fulfilled the reasonable expectations of the warrant and clearly justified the jury finding of guilt. The defense rested

at the trial without offering any testimony, and it is not suggested on this appeal that the verdict was contrary to the weight of the evidence.

The appeal presents as grounds for reversal (1) a claim that the trial court erred in denying defendant's pretrial motion to suppress the evidence of defendant's participation in the gambling operation which was seized pursuant to the search warrant, and (2) that the trial court committed prejudicial error in limiting the defense cross-examination of a police officer who was a witness for the State.

██ The second ground of appeal requires no extended discussion and may be disposed of at once. The testimony of the officer is not included in the appendix nor are the questions propounded to him by the defense on cross-examination or the arguments thereon at the trial set forth in the appendix or defendant's brief. However, their general nature is discussed in defendant's brief which suggests that they presented an additional basis for a defense attack on the witness' credibility. Ordinarily the scope of cross-examination of a witness rests in the discretion of the trial court. We see no such abuse of that discretion as would justify a finding of prejudicial error.

The record discloses that on March 20, 1970 State Trooper Laurent H. Gauthier executed a lengthy affidavit before the Law Division judge for the purpose of obtaining a warrant to search defendant's one family two-story house at 326 Bloomfield Avenue, Bloomfield. Gauthier had been a trooper for six years and had investigated numerous gambling complaints throughout the State. He swore that he received information from an informant, whose information had proved reliable in the past and had resulted in gambling arrests. The informant told him that a certain male was conducting a bookmaking or lottery operation or both at the address given above, and that the informant said he had placed numerous horse bets "in the past" with that person over telephone number 429-9377. According to Gauthier the New Jersey Bell Telephone Company records disclosed that number listed

to F. Petillo, 326 Bloomfield Avenue, Bloomfield, and further that there was an auxiliary number, 429–4933 also listed to the same person at that address.

The affidavit recited further that on March 4 at about 3:15 P.M. and March 5 at about 2:35 P.M. Gauthier met with the informant who said he could place a horse bet over 429–9377. On both occasions the officer dialed the number and on hearing a male voice say "hello," he handed the phone to the informant who identified himself, placed such bets and hung up.

On March 5 Gauthier conducted a surveillance of the Bloomfield home from 10 A.M. to 2 P.M. At 11:25 A.M. he observed a late model black Oldsmobile, New Jersey registration NLK 307 park in front of the house. A male about 5'8" tall, wearing a brown leather jacket and gray trousers alighted from the car carrying a paper bag. He went into the side entrance of the house. On March 6 and 9 the same surveillance was carried on and the same male driving the same car arrived and went into the house, this time carrying a red trimmed newspaper as well as a paper bag. Check showed the car registered to a Montclair resident.

After considering the affidavit and accepting the statements therein as credible the Law Division judge found that "probable cause existed to believe" that criminal gambling was being conducted at the described premises, and on the same day he authorized a search for evidence thereof. Gauthier and several other officers executed the search warrant later that afternoon and obtained ample evidence of bookmaking. When the officers forced their way into the house, Gauthier found Petillo (whose counsel later stipulated that he and his family were the tenants of the one family residence) in the kitchen standing at the sink. The water was running and defendant was swishing his hands around in the sink where particles of water soluble paper were observed in the drain. Search of the dining room revealed water soluble paper in a china closet, which one officer, who qualified at the trial as a gambl-

ing investigation expert, said was commonly used by book-makers in order to facilitate destruction of the written record of their activities.

On the kitchen floor near a table on which was evidence of bookmaking activity, was a telephone with its wires ripped out. A loose telephone wire led across the kitchen floor and into the basement where it was hooked to a terminal box. One detective reconnected the wires and began to answer the phone, first in the kitchen, then in the basement. Some callers placed horse and number bets, some asked for "Frankie," and others refused to talk.

Following his indictment for bookmaking, and maintaining a house to which persons might resort for gambling pur-poses, Petillo moved to suppress the inculpatory evidence ob-tained in the raid on the ground that parts of Trooper Gauthier's affidavit to procure the search warrant were per-jurious. The claim was not that as a matter of law the fac-tual statements in the affidavit were not sufficient to justify issuance of the warrant; it was that certain indispensably ma-terial facts therein were untrue and therefore the warrant was illegal. Nor was it suggested that affidavit on its face lacked a satisfactory appearance of trustworthiness. At the hearing on the motion the State objected to the intro-duction of any such alleged proof on the ground that the only issue properly before the court was whether the factual recitation contained in the affidavit sworn to before the judge who issued the warrant was legally sufficient to warrant a find-ing of probable cause to believe that the criminal activity described was being carried on at the named premises. The trial court overruled the objection.

Defendant then produced Mrs. Dorothy Waski, Assistant Manager of the New Jersey Bell Telephone Company office in Montclair. According to her testimony the company records showed that Petillo had two telephone numbers as-signed to him on December 3, 1969. They were 429-9377 and 748-4933; four telephone instruments were installed for 9377; one for 4933 which was described as an auxiliary line.

The witness then testified that the two different exchange numbers, 429 and 748 were given to Petillo through inadvertence and would cause computer billing problems — even though both exchanges covered the Bloomfield area. On its own initiative, therefore, on December 18, 1969 the company changed 429-9377 to 748-8869 and left the auxiliary line 748-4933 unchanged. The physical work to achieve the result was done at the company's central office, not at Petillo's home. The company simply sent him the new number plates to be placed on the telephones. After the change was made at the central office, Mrs. Waski said, if someone called the old number 429-9377 (which was never assigned thereafter to anyone else), an intercept operator would come in and advise him that the number called was not a working number, or perhaps a female computerized voice would deliver the message. Thus, no connection would be made with the dialed number, unless the subscriber had requested a transfer of calls to the new number, in which event the transfer would be made. However, the witness said such an arrangement was not requested in this case. But, even though not a telephone engineer, she did indicate, perhaps relying on her 27 years as a company employee, that some skilled person by manipulating the wires might be able to circumvent the interception. Although such inexpert statement cannot carry much probative force, it does excite suspicion as to the significance of the wire which the officers found pulled out of the kitchen telephone, and leading across the kitchen floor down the steps into the basement, where it was connected to a terminal box. Why that wire leading to the one telephone (of the five on the premises) was pulled out is not explained. Plainly, however, it was being used in the bookmaking operation, because when a detective reconnected it, bets began to come in over the telephone. It seems likely that if the officers were aware at that time of the change of 429-9377 to 748-8869, they would have investigated the wiring and connections more carefully.

██ ██ Following argument the trial judge denied the motion to suppress. He found that perjury on the part of Trooper Gauthier had not been established with respect to his assertions that bets had been placed over telephone number 429-9377 on March 4 and 5, 1970; and further that even if the references to such telephone calls were eliminated from Gauthier's affidavit, in his judgment probable cause existed for the issuance of the search warrant by the Law Division judge. We agree with that determination, but for future guidance feel obliged to deal with the basic question whether the truth of the factual assertions contained in the affidavit submitted in support of an application for a search warrant may be controverted on a subsequent motion to suppress the incriminatory evidence seized in the execution of the warrant. We hold that it may not be done.

██ ██ The Fourth Amendment of the United States Constitution, and Article I, ¶ 7 of the New Jersey Constitution authorize issuance of a search warrant by a proper judicial officer upon a showing supported by "oath or affirmation" of probable cause to believe that a crime has been, is about to be, or is being committed at the place described. As this Court said in *State v. Burnett,* 42 *N. J.* 377, 388 (1964), with the subsequent express approval of the United States Supreme Court in *McCray v. Illinois,* 386 *U. S.* 300, 306–308, 87 S. Ct. 1056, 18 *L. Ed.* 2d 62, 68–69, reh. den. 386 *U. S.* 1042, 87 S. Ct. 1474, 18 *L. Ed.* 2d 616 (1967), the Constitutions are satisfied if a judicial mind decides that the sworn factual allegations set out in the affidavit or testimony sworn to before him show the required probable cause. When such proof is presented the judge is trusted to evaluate the legal sufficiency of the sworn facts to support such a determination, and the credibility of the affiant in asserting them. Undoubtedly, if the judge has any doubts or suspicion on the matter of credibility, he may require additional proof or subject the affiant to further examination. But if he is satisfied on both scores, and the facts do make

a sufficient showing of probable cause, then the legal propriety of the issuance of the warrant ought to be beyond further question.

The standard provided in the Constitutions as the basis for intrusion into the home of a citizen because of alleged gambling activities is not proof of his guilt of the criminal offense. The requirement is sworn statements of fact of sufficient legal quality to persuade an impartial judge that probable cause exists to believe that the crime described is being committed at the place. Once that test is met to the satisfaction of the judge, relitigation of the truth of the factual basis for *issuance* of the warrant should not be permitted. The ultimate truth of the criminal charge against the accused is not involved on a suppression motion. On the contrary his effort is to avoid the evidence of that truth which provides corroboration of the basic truthfulness of the affidavit. *State v. Burnett, supra,* 42 *N. J.* at 386, and *Cf. People v. Mack,* 12 *Ill.* 2d 151, 145 *N. E.* 2d 609, 615-616 (1957).

In our view the constitutional safeguards are met when the impartial judge finds the affidavit for the warrant credible and legally sufficient. Compliance with the requirement for an oath by the officer must be regarded as a procedurally adequate manifestation of his veracity. That oath followed by the judge's determination that the facts vouched for show probable cause are all the Constitutions demand and guarantee to our citizens. If the police officers lie, the truth of the accused's alleged criminal activities as revealed by the evidence seized under the warrant will not be diluted. In that event, as the Chief Justice noted in *State v. Burnett, supra,* the accused will have to meet nothing more nor worse than the "truth" at a plenary trial. 42 *N. J.* at 386. Further, so far as the untruthful officers are concerned, they expose themselves to the sanctions of indictment for perjury or false swearing, a charge of criminal contempt, and assessment of monetary damages in a civil action. See, *People v. Bak,* 42 *Ill.* 2d 140, 258 *N. E.* 2d 341, 343, *cert.* den. 400

*U. S.* 882, 91 S. Ct. 117, 27 *L. Ed.* 2d 121 (1970); *People v. McGrain,* 38 *Ill.* 2d 189, 230 *N. E.* 2d 699 (1967); *State v. Anselmo,* 260 *La.* 306, 256 *So.* 2d 98, 103 (1971), *cert.* den. 407 *U. S.* 911, 92 S. Ct. 2438, 32 L. Ed. 2d 685 (6-12-72); *Dawson v. State,* 11 *Md. App.* 694, 276 *A.* 2d 680, 691 (1971); *Burrell v. State,* 207 *Md.* 278, 113 A. 2d 884 (1955); Compare, *N. J. S. A.* 2A:156A-24.

There is some conflict among the authorities as to whether after a search warrant has been executed and has produced evidence of the crime charged, a defendant should be permitted to attack the truthfulness of the affidavit submitted to the issuing judge and which was accepted by him as credibly supporting issuance of the warrant. The Supreme Court of Illinois in *People v. Bak, supra,* adopted the majority and, we think, the better and more practical rule, and we accept it for New Jersey. It expressed the view that the Federal and State Constitutions

[C]ontemplate only that a judicial officer find probable cause for the issuance of a warrant based on the evidence under oath that has been presented to him by the one requesting the warrant. It is contemplated that the credibility of the affiant or others offering evidence is for the judicial officer. If he finds the evidence worthy of belief and sufficient to form probable cause, this judicial determination cannot be relitigated through a later disputing of the evidence. Should an affiant betray the confidence in his integrity which is contemplated by the *ex parte* proceeding and intentionally make misrepresentations to the judicial officer, he can be punished for the offense. In People v. McGrain, 38 Ill. 2d 189, 190–191, 230 N. E. 2d 699, it was correctly asserted that "the rule [is] that the constitutional guarantee against unreasonable searches and seizures requires that the complaint must state the underlying facts on which the complainant bases his belief with such definiteness that, if the complaint is false, perjury may be assigned upon it." That this and no more are contemplated by the procedure for finding probable cause and issuing search warrants is supported by the expression of the Supreme Court of New Jersey (State v. Burnett, 42 N. J. 377, 201 A. 2d 39) which the Supreme Court in McCray v. Illinois, 386 U. S. 300, adopted at p. 307, 87 S. Ct. 1056, at 1060, 18 L. Ed. 2d 62 * * *. 258 *N. E.* 2d at 343.

See, also, *People v. Mitchell,* 45 *Ill.* 2d 148, 258 *N. E.* 2d 345, *cert.* den. 400 *U. S.* 882, 91 S. Ct. 117, 27 *L. Ed.* 2d

120 (1970); *People v. Marro,* 4 *Ill. App.* 3d 197, 280 *N. E.* 2d 560 (App. Ct. 1972); *People v. Healy,* 126 *Ill. App.* 2d 189, 261 *N. E.* 2d 468 (1970), *cert.* den. 402 *U. S.* 905, 91 S. Ct. 1365, 28 *L. Ed.* 2d 645 (1971); *State v. Rulli,* 116 *N. J. Super.* 120 (App. Div. 1971); *State v. Gillman,* 113 *N. J. Super.* 302 (App. Div. 1971); *United States v. Mihileas,* 333 *F. Supp.* 231 (S. D. N. Y. 1971); *Kenney v. United States,* 81 U. S. App. D. C. 259, 157 *F.* 2d 442 (1946); *United States v. Brunett,* 53 *F.* 2d 219 (W. D. Mo. 1931); *State v. Anselmo, supra,* 256 *So.* 2d at 101–102, and cases cited therein; *Dawson v. State, supra,* 276 *A.* 2d at 690–691; *Tucker v. State,* 244 *Md.* 488, 224 *A.* 2d 111 (1966), *cert.* den. 386 *U. S.* 1024, 87 S. Ct. 1381, 18 *L. Ed.* 2d 463 (1967); *Burrell v. State, supra,* 113 *A.* 2d at 885; *Smith v. State,* 191 *Md.* 329, 62 *A.* 2d 287, 289 (1948), *cert.* den. 336 *U. S.* 925, 69 S. Ct. 656, 93 *L. Ed.* 1087 (1949); *Johnson v. State,* 163 *Tex. Crim. App.* 101, 289 *S. W.* 2d 249 (1956); *Owens v. State,* 217 *Tenn.* 544, 399 *S. W.* 2d 507, 511 (1965); *Annot.* 5 *A. L. R.* 2d 394 (1949).

Some Federal courts and the New York Court of Appeals have indicated that a defendant may be granted a hearing with respect to the truth of a legally sufficient affidavit for a search warrant, but "only when there has been an initial showing of falsehood or other imposition on the [judge]" who issued the warrant. *United States v. Dunnings,* 425 *F.* 2d 836, 839–840; (2 Cir. 1969), *cert.* den. 397 *U. S.* 1002, 90 S. Ct. 1149, 25 *L. Ed.* 2d 412 (1970); *United States v. Thornton,* 454 *F.* 2d 957, 966–970 (D. C. Cir. 1971); *United States v. Halsey,* 257 *F. Supp.* 1002 (S. D. N. Y. 1966); *People v. Alfinito,* 16 *N. Y.* 2d 181, 264 *N. Y. S.* 2d 243, 211 *N. E.* 2d 644 (1965). Even these cases reject the idea that in every case on a routine demand a hearing may be granted as to the truth of the affidavit. They explain that if the judgment of the independent issuing judge is to be respected and given the weight the Fourth Amendment obviously intended it should have, that factor alone provides substantial ground for another judge to re-

fuse to grant a *de novo* trial of the original determination of probable cause, or to grant a general exploratory inquiry into the truth of the affidavit for the warrant. It may be noted also that the United States Supreme Court has refrained thus far from deciding the issue (*Rugendorf v. United States,* 376 *U. S.* 528, 531–532, 84 S. Ct. 825, 11 *L. Ed.* 2d 887, 891, reh. den. 377 *U. S.* 940, 84 S. Ct. 1330, 12 *L. Ed.* 2d 303 (1964)), and that *certiorari* was denied in the two leading Illinois cases, *Bak* and *Mitchell,* in the Maryland case of *Tucker,* and in the Louisiana case of *Anselmo,* all cited above, for the principle that when affidavits show probable cause for the granting of a search warrant, and they are accepted as credible by the issuing judge, their truthfulness cannot be relitigated.

■ When applications are made for search warrants the court is not called upon to decide whether the offense charged has in fact been committed. It is concerned only with whether the apparent facts set out in the affidavit are sufficient to lead a reasonably discreet and prudent judge to the belief that the offense charged has been or is being committed. If so probable cause exists for issuance of a warrant. *Dumbra v. United States,* 268 *U. S.* 435, 45 S. Ct. 546, 69 *L. Ed.* 1032 (1925). If upon execution of the warrant, evidence of the crime described in the affidavit is seized, it cannot be gainsaid that some measure of corroboration of the truthfulness of the factual allegations of the affidavit arises. This does not mean that the result is being used to establish probable cause for the making of the search. Existence of such cause depends entirely upon the sufficiency of the affidavit presented. But if in spite of the corroboration furnished by the seizure a motion to suppress the evidence because of alleged falsity of the affidavit is to be sanctioned, the hearing thereon will be tantamount to a trial of the merits of the criminal charge, without actually resulting in a determination of the ultimate issue of guilt or innocence.

Recognition of a right in an accused to go behind the adequate showing of probable cause would add a further heavy

burden to an already over-burdened criminal trial calendar. It would seriously retard the expeditious disposition of criminal cases without significantly aiding in determination of the ultimate truth of crime charged against the defendant. It is common knowledge that a great number of motions to suppress search warrants are made routinely at the present time on the ground that the supporting affidavit does not sufficiently demonstrate probable cause. The hearings thereon are time-consuming and the results indicate that the motivation is very frequently pursuit of discovery rather than to show lack of compliance with the Fourth Amendment. In our judgment the inevitably increased burden on trial judges that would be added if defendant's suggested attack on the veracity of statements were sanctioned, is not justified by the speculative risk of a rare warrant issued on a false statement.

It must be remembered that the question on such a motion is not guilt or innocence of the defendant; the issue arises only because the search proved productive. Although that result alone could not validate a lawless search,[1] it does serve as a reminder that a balance must be struck, and that the social costs of unwarranted extension of search and seizure principles should not be ignored. If the function of the judge issuing the warrant is to be meaningful, and if the independent exercise of his judgment is to be encouraged whenever the supporting affidavit sufficiently shows probable cause, the truthfulness thereof should not be relitigated on a motion prior to plenary trial of the issue of guilt or innocence. We think such a rule adequately serves the purpose of the Fourth Amendment, and that sufficient deterrence to the rare false

---

[1] We do not consider whether a motion to suppress ought to be allowed where proof is offered to show that the person named in the affidavit as the affiant and who signed with that name falsely represented herself as the affiant. See, *King v. United States*, 282 *F*. 2d 398 (4 Cir. 1960) ; *United States ex rel Pugh v. Pate*, 401 *F*. 2d 6 (7 Cir. 1968), cert. den. 394 *U. S.* 999, 85 S. Ct. 1590, 22 *L. Ed.* 2d 777 (1969) ; *Dawson v. State, supra*, 276 *A*. 2d at 690.

affidavit that may slip by the issuing judge is provided by the sanctions of perjury, contempt and civil damages.

For the reasons expressed the trial judge should not have allowed defendant to attack the truthfulness of the portions of the State Trooper's affidavit described above. But, since we agree that the facts submitted were not sufficient to justify a declaration that the search warrant was illegally issued, his ultimate decision on the motion is sustained, and defendant's conviction is affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*For reversal*—None.