**UNITED STATES of America ex rel. Frank PETILLO, Petitioner,**

v.

**STATE OF NEW JERSEY et al., Respondents.**

**Angelo ALBANESE, Petitioner,**

v.

**Howard YEAGER et al., Respondents.**

Civ. A. Nos. 1252–73, 1808–73.

United States District Court, D. New Jersey.

Aug. 25, 1976.

Stanley C. Van Ness, Public Defender, Trenton, N.J., by Rosemary Karcher Reavey, Asst. Deputy Public Defender, East Orange, N.J., for petitioner Petillo.

Joseph P. Lordi, Essex County Prosecutor, Newark, N.J., by R. Benjamin Cohen, Asst. Prosecutor Atty., Newark, N.J., for respondents State of New Jersey, et al.

Noonan & Flynn, by Robert J. DeGroot, Newark, N.J., for petitioner Albanese.

Joseph P. Lordi, Essex County Prosecutor by Kenneth P. Ply, Asst. Prosecutor Atty., Newark, N.J., for respondents Howard Yeager, et al.

STERN, District Judge.

These consolidated petitions for writs of habeas corpus come before the Court on

remand from the United States Court of Appeals for the Third Circuit for reconsideration in light of *Stone v. Powell,* —— U.S. ——, 96 S.Ct. 3037, 49 L.Ed.2d —— (1976), decided by the Supreme Court after oral argument was heard on these cases in the Court of Appeals. *United States ex rel. Frank Petillo v. State of New Jersey, et al.,* No. 75–2311 (3rd Cir. August 4, 1976).[1] This Court incorporates by reference its original opinion, 400 F.Supp. 1152 (D.N.J. 1975), in this opinion.

In *Stone,* the Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." —— U.S. at ——, 96 S.Ct. at 3052. The question to be addressed here, therefore, is whether these petitioners were provided such an opportunity.

In the original opinion, this Court discussed at length the question "whether the exclusion remedy for Fourth Amendment violations ought to be viewed as of constitutional dimension for purposes of collateral attack by petition for a writ of habeas corpus." 400 F.Supp. at 1186, n.17. The Court noted that such a constitutional claim often "has little or no bearing upon the issue of guilt or innocence or upon the integrity of the fact-finding process," and that on collateral review "the asserted deterrent purposes of the exclusionary rule are likely to be so attenuated as no longer to warrant its application." *Id.*

1. The text of the *per curiam* opinion of the Court of Appeals follows:

In unrelated trials in the state courts of New Jersey, Frank Petillo and Angelo Albanese were convicted of having committed crimes. Each had filed a motion to suppress evidence;[1] the motions were denied, and evidence that had been seized by law enforcement officials during searches of the defendants' homes was introduced at the trials.

[1] It would appear that Albanese's motion to suppress was not timely made. The trial judge seems to have treated it as untimely, but then to have denied it on the merits as well. We express no views on whether the objection to the filing of the motion was waived in the state court.

Both convictions were affirmed on appeal.[2]

[2] *State v. Petillo,* 61 N.J. 165, 293 A.2d 649 (1972), *cert. denied,* 410 U.S. 945, 93 S.Ct. 1393, 35 L.Ed.2d 611 (1973); *State v. Albanese,* No. A–2989–71 (N.J.Super.Ct., App. Div., Sept. 20, 1973) (per curiam), *certif. denied,* 64 N.J. 312, 315 A.2d 401 (1973).

Petillo and Albanese subsequently filed petitions in the federal district court for writs of habeas corpus. The two cases were originally assigned to two district judges, but were later consolidated and determined by one judge.

The district court granted writs of habeas corpus to both petitioners.[3] It did so on the

[3] 400 F.Supp. 1152 (D.N.J.1975).

the basis that each of them had made a *prima facie* showing that the warrant for the search of his home had been procured through material and knowing misstatements of fact by the officers who had sworn out the affidavits underlying the warrants, and that neither had been afforded a fair and adequate hearing at which it could be determined whether the magistrate who issued the warrants had been deceived. The State of New Jersey appealed to this Court.

After the appeal had been filed and the matter had been briefed in this Court, the Supreme Court ruled in *Stone v. Powell*[4] that

[4] —— U.S. ——, 96 S.Ct. 3037, 49 L.Ed.2d —— (1976).

"where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."[5]

[5] *Id.* at ——, 96 S.Ct. at 3052 (footnotes omitted).

Although there is an indication that the district court may have anticipated the holding in *Stone,*[6] neither the holding nor the reasoning of the Supreme Court was available to the district court when it rendered its decision, or to counsel when the briefs were filed in this Court. Our review of the important issue posed by the present cases can best be made with the assistance of the views of the district court, reflecting the impact of the *Stone* opinion on this litigation, after it has had the benefit of briefs submitted by all parties.

[6] The Supreme Court had granted certiorari in *Stone,* 422 U.S. 1055, 96 S.Ct. 2676, 45 L.Ed.2d 708 (1975), almost three months prior to the decision of the district court.

Accordingly, the judgment of the district court will be vacated and the cause will be remanded for reconsideration in light of *Stone v. Powell.*

The Court was aware of the pendency of *Stone*,[2] and specifically examined the restrictive standard for application of the exclusionary rule on collateral review enunciated by Mr. Justice Powell, the author of the Supreme Court's opinion in *Stone,* in his concurring opinion in *Schneckloth v. Bustamonte,* 412 U.S. 218, 250, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). 400 F.Supp. at 1186–1187, n.17. It is this Court's view that the reasoning and result of Mr. Justice Powell's concurring opinion have now been adopted by the majority of the Supreme Court in *Stone.* —— U.S. at ——, 96 S.Ct. 3037.

In its original opinion this Court wrote:

. . . [E]ven the concurring Justices in *Bustamonte,* who would reduce the scope of the exclusionary rule on collateral review, recognize the necessity of a full and fair hearing of Fourth Amendment claims in either state or federal court:

Where there is no constitutional claim bearing on innocence, *the inquiry of the federal court on habeas review of a state prisoner's Fourth Amendment claim should be confined solely to the question of whether the defendant was provided a fair opportunity in the state courts to raise and have adjudicated the Fourth Amendment claim.*

412 U.S. at 266, 93 S.Ct. at 2067 (Emphasis added)

Upon examination of the instant record within the scope of review suggested by Mr. Justice Powell, the Court must conclude that both petitioners were denied a full and fair hearing on their Fourth Amendment claims, in violation of the Due Process Clause of the Fourteenth Amendment. . . .

400 F.Supp. at 1187, n.17.

■ New Jersey has fashioned a rule which deprives all defendants of a state forum "for the full and fair litigation" of such Fourth Amendment claims. That rule was announced on the direct appeal of one of the petitioners now before the Court. *State v. Petillo,* 61 N.J. 165, 293 A.2d 649 (1972), *cert. denied,* 410 U.S. 945, 93 S.Ct. 1393, 35 L.Ed.2d 611 (1973). Under the Petillo Rule the subject of a search is simply not entitled to litigate his federal claim—that evidence seized pursuant to a warrant procured by police perjury ought to be suppressed—in state court.[3] Whatever his rights to sue later under the Civil Rights Act or to seek subsequent criminal prosecution of officers who have perjured themselves, and however effective these supposed remedies may be, the injured defendant still has a constitutional right to suppress

---

**2.** This Court noted that the State of New Jersey, without this Court's request, had submitted its *amicus curiae* brief in *Wolff v. Rice,* which was decided by the Supreme Court with *Stone v. Powell,* to this Court in the context of the instant cases. In that brief, as this Court observed, the State "effectively concedes the very premise of the instant opinion":

> Of course, it is presumed that motions to suppress are available in state courts and that these motions are decided in good faith. *The failure of a state system to provide such a remedy would be a denial of procedural due process.* . . .
> Again, in a pragmatic sense, the state prisoner who claims deprivation of Fourth Amendment rights is guilty. His incarceration is pragmatically just. Therefore, he should not be permitted to raise collaterally that which may well have been determined, or could have been determined, directly. *Only if the deprivation becomes one of due process should he be heard.*

Amicus Brief, at 26–27. (Emphasis added) 400 F.Supp. at 1188, n.17.

**3.** In tracing the history of the habeas corpus statute in *Stone,* the Supreme Court identified *Frank v. Mangum,* 237 U.S. 309, 333–336, 35 S.Ct. 582, 59 L.Ed. 969 (1915) as a significant expansion of the substantive scope of the writ:

> In *Frank,* the prisoner had claimed in the state courts that the proceedings which resulted in his conviction for murder had been dominated by a mob. After the state supreme court rejected his contentions, Frank unsuccessfully sought habeas corpus relief in the federal district court. This Court affirmed the denial of relief because Frank's federal claims had been considered by a competent and unbiased state tribunal. *The Court recognized, however, that if a habeas corpus court found that the State had failed to provide adequate "corrective process" for the full and fair litigation of federal claims, whether or not "jurisdictional," the court could inquire into the merits to determine whether a detention was lawful.*

—— U.S. at ——, 96 S.Ct. at 3043. (Emphasis added)

the fruits of the search. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). *Stone* does not diminish this right, but only the circumstances under which it may be claimed on collateral review. New Jersey thus effectively denies the subject of the search the right to suppress the fruits of warrants procured by perjury by denying him a hearing on the veracity of the underlying affidavit—no matter how compelling his preliminary showing of perjury may be.

■ This Court has carefully examined the opinion of the Supreme Court in *Stone,* and in compliance with the directive of the Court of Appeals has sought and received the views of counsel on the question of *Stone's* effect on the instant cases. The Court is convinced that both petitions fall squarely within the remaining ambit of application of the exclusionary rule on collateral review.

The Supreme Court's holding could not be more clear. The question before the Court involved only state prisoners "who have been afforded the opportunity for full and fair consideration of their reliance upon the exclusionary rule with respect to seized evidence by the state courts at trial and on direct review." —— U.S. at ——, 96 S.Ct. at 3049. This Court has held that the instant petitioners do not fall into that category. Having determined that petitioners have made a sufficient "showing that [they were] denied an opportunity for a full and fair litigation of that [Fourth Amendment] claim at trial and on direct review," —— U.S. at ——, 96 S.Ct. at 3052, n.37, this Court must issue the writs.[4]

4. Even the concurring opinion of the Chief Justice in *Stone,* which advocates the abolition of the exclusionary rule, gives added support for its application as a deterrent to unlawful police conduct here:

> The "sanction" is particularly indirect when . . . the police go before a magistrate, who issues a warrant. Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law. Imposing an admittedly indirect "sanction" on the police officer in that instance is nothing less than sophisticated nonsense.

—— U.S. at ——, 96 S.Ct. at 3054 (concurring opinion of Burger, C. J.)

The Chief Justice's opinion illustrates the fundamental difference between the usual case involving the suppression of the fruits of a search conducted pursuant to a warrant, and the instant petitions. If a magistrate commits an error of law in issuing a warrant on less than probable cause, although on facts honestly presented, it may be appropriate to limit the motion to a challenge of the legal sufficiency of the facts before the issuing judge. In the instant cases, however, petitioners contended in state court that the police officers had knowingly misrepresented facts to the issuing magistrate. Though after the warrants had issued there was "nothing more the policeman [could] do in seeking to comply with the law," he had already broken the law according to the allegations raised by petitioners in state court. To deny petitioners the opportunity to prove and to vindicate that Fourth Amendment claim, as the state courts did here, was to eviscerate the deterrent force of the exclusionary rule "at

trial and on direct review." —— U.S. at ——, 96 S.Ct. at 3054; cf. —— U.S. at ——, 96 S.Ct. at 3052, n.37.

In view of a stated purpose of the exclusionary rule, the deterrence of illegal police conduct, New Jersey's Suppression rule is anomalous. The effect of the *Petillo* rule is to grant a suppression hearing to determine whether the magistrate erred in finding probable cause on the basis of facts *honestly* presented by the police, but to deny an evidentiary hearing to expose erroneous probable cause determinations predicated on *perjurious* testimony by the police. It is difficult to see how the goal of deterring police misconduct is advanced by granting a hearing where there is no claim that the police have acted other than honestly, and denying a hearing where it is alleged that they themselves have broken the law.

We continue to read of criminals who are "going free" because "the constable has blundered." *People v. Defore,* 242 N.Y. 13, 21, 150 N.E. 585, 587 (1926) (Cardozo, J.). *See, e. g., Stone v. Powell, supra,* at ——, 96 S.Ct. 3037 (concurring opinion of Burger, C. J.). Cardozo's masterful imagery calls to mind a dull-witted but honest servant of the law, floundering in a sea of emergent and sophisticated jurisprudential choices while a crafty criminal squirms away through a constitutional loophole. No doubt this is sometimes the case. Perhaps it even happens often. But what do "blunders" have to do with perjurious affidavits, fictional informers or other devices deliberately deployed to enlist the courts as "accomplices in the willful disobedience of a Constitution they are sworn to uphold?" *Elkins v. United States,* 364 U.S. 206, 223, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960). This much at least is clear: whether evidence is obtained by venal

For the reasons expressed in the Court's original opinion and for the additional reasons expressed herein, writs of habeas corpus will issue for both petitioners under the terms and conditions embodied in the Court's original opinion, 400 F.Supp. at 1190. The State is hereby instructed that upon issuance of the writs all incidents of the convictions at issue, including fines and parole requirements, are to be dissolved.

violation of law or by mere blunder, if the Constitution would deny the constable access to that evidence it is no mere gratuity to crime to order it suppressed.

The question remains, of course, whether Petillo and Albanese were subjected to the full impact of the *Petillo* Rule, or whether *Petillo* was prospective only. As the Court observed in its initial opinion, Petillo was given some sort of hearing and Albanese's motion to suppress may have been late. The Court has dealt fully with these issues before, and there is no indication in the opinion of the Court of Appeals that the earlier findings, whether right or wrong, were inadequate.

The Court notes only that there is substantial question whether Albanese's motion could conceivably have been ruled out of time in state court. At the status conference, before this Court on August 9, 1976, after the case had been remanded by the Court of Appeals, the Court had the following colloquy with counsel for the State in *Albanese:*

MR. PLY: At oral argument there was a good deal of discussion as to exactly what Judge Hayden's ruling was and what the ruling to the Appellate Division was as to whether or not the motion was denied as being out of time.

THE COURT: There is no question about the fact, is there, that the Appellate Division ruled that Albanese was not entitled to a hearing and cited the so-called Petillo Rule?

MR. PLY: Only after they pointed out that the motion to suppress was untimely and that no good cause was shown at the trial level to extend time.

THE COURT: Well, the so-called perjury was not discovered until after the first trial; isn't that right?

MR. PLY: That's correct.

THE COURT: I mean, the fact that the officer testified differently at trial than he testified in his affidavit was hardly something knowable pretrial; would it be?

MR. PLY: That would be the defense position that was argued—that was argued before Judge Hayden.

THE COURT: I'm asking you. Isn't that so?

MR. PLY: Until the first trial, that would be unknowable. That's right.

THE COURT: So that Albanese could hardly have made a petition for suppression based on the contradictory testimony which had not yet been given; is that right?

MR. PLY: He couldn't have on that basis. Tr. 8/9/76. *See* 400 F.Supp. at 1171–1174.