SUMMERS, Justice.
On the State’s application we granted writs, 259 La. 681, 251 So.2d 380, under our supervisory jurisdiction to review an order of the Criminal District Court of Orleans Parish sustaining a motion to suppress evidence seized by virtue of a search warrant. The warrant issued by another judge of the same court commanded the search of the premises described as 919 Governor Nicholls Street, Apartment 4, in New Orleans, and authorized the seizure there of narcotics, narcotic paraphernalia, hallucinogenic drugs and guns.
The search warrant was issued on the basis of an affidavit signed by Officer Jerry Faulkner of the New Orleans Police Department. It recited that on Wednesday,-March 24, 1971, Faulkner-received a telephone call- from an unknown white male who told him that defendants were selling marijuana,- pills and cocaine from 919 Governor Nicholls .Street, Apartment 4. The informant stated that he had attended a “pot party” (marijuana smoking) at that address in which he saw defendants smoking and distributing marijuana. The informer refused to give his name.
Faulkner further affirmed that on Friday, March 26, 1971, he spoke to a reliable and confidential informer who had in the past given information resulting in the arrest and conviction of numerous narcotic violators. This informer told Faulkner that he had been invited by one of the defendants to attend a “pot party” to be held later that night at the 919 Governor Nicholls Street address. According to Faulkner’s sworn statement, at approximately 8 o’clock that same night, he met the informer and performed a “strip search” upon him for drugs. Finding none, he instruct ed the informer to attend the “pot party” and, if possible, to procure some of the drugs. The informer was then kept under surveillance by Faulkner until he entered 919 Governor Nicholls Street, Apt. 4. Later, about 10:30 that evening the informer was observed by Faulkner leaving 919 Governor Nicholls Street, at which time he turned over to Faulkner a small quantity of greenish-brown vegetable matter procured at the “pot party.” A field test proved positive for the presence of marijuana.
The application for the search warrant and the affidavit .supporting .it were presented and the search warrant issued on *311 March 29, 1971. On that same evening at 7:30 Officers Faulkner and James Lewis seized narcotics and narcotic paraphernalia in the apartment, leaving one copy of the search warrant with the defendant Anselmo.
On May 17, 1971, defendants were charged in a bill of information with possession of marijuana, a controlled dangerous substance. La.R.S. 40:971.
The following month defendants filed a motion to suppress. In this motion, they alleged they were the sole residents of apartment #4 at 919 Governor Nicholls Street; that the affidavit which was the basis for the issuance of the search warrant authorizing the search of these premises was based upon information supplied by an informant; that the information was unreliable, fraudulent and intentionally falsified; and, therefore, the search warrant was defective and the evidence seized should be suppressed.
In a memorandum brief filed in .support of the motion to suppress, defendants state that the informer referred to in the affidavit in support of the search warrant “did intentionally and fraudulently manufacture a story concerning a ‘pot party’ he allegedly attended at defendants’ apartment on March 26, 1971,” and that “defendants can conclusively show that there was no such ‘pot party’ at their apartment on that date.” The brief urged the trial judge to hold an evidentiary hearing on the motion to suppress to permit defendants to establish the falsity of the information given by the informer. Over the State’s objection, defendants were permitted to produce a number of witnesses, all of whom swore that defendants were not at 919 Governor Nicholls Street when the informer allegedly obtained the marijuana on the night of March 26, 1971.
After hearing the evidence the trial judge sustained the motion to suppress, stating his reasons from the bench:
In this case the Court after hearing the evidence, and reading the trial memoranda submitted by both sides, the Court is of the opinion that the affidavit filed herein was based on false information of the informer. This is not to in any way allude to the integrity of the police officer who was the actual affiant in the case. This Court is very familiar with his honesty and integrity.. He just got a bum steer apparently from the informer. I realize that the State is in a position where they can’t come back at the evidence produced by the defendant in such a situation because of the fact it would mean disclosing the identity of the informer.
The defense has produced evidence that is uncontradicted and uncontroverted by the State; and consequently, the Court sustains the Motion to Suppress the Evidence in each case.”
*313 To review this ruling, writs were granted.
The issue presented is whether the truthfulness of the facts set out in an affidavit supporting a search warrant may later be attacked at a hearing on a motion to suppress.
The Fourth Amendment to the United States Constitution and Article I, Section 7 of the Constitution of this State are almost identical. Both assure the right of the people to be secure in their persons, houses and effects against “unreasonable” searches and seizures. Both prescribe that no search warrant shall issue except “upon probable cause, supported by oath or affirmation” particularly describing the place to be searched and the persons or things to be seized.
In Ker v. California, 374 U.S. 23, 83 S. Ct. 1623, 10 L.Ed.2d 726 (1963) the United States Supreme Court held that the “Fourth Amendment’s proscriptions are enforced against the States through the Fourteenth Amendment,” and that “the standard of reasonableness is the same under the Fourth and Fourteenth Amendments.” See Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).
The Supreme Court of the United States has not yet ruled squarely on the question before us. Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964). However, it is relevant to note that earlier this year the United States Supreme Court denied certiorari in People v. Healy, 126 Ill.App.2d 189, 261 N.E.2d 468 (1970). See Healy v. Illinois, 402 U.S. 905, 91 S.Ct. 1365, 28 L.Ed.2d 645 (1971).
The decision in People v. Healy, supra, was based upon a decision by the Supreme Court of Illinois in People v. Bak, 45 Ill.2d 140, 258 N.E.2d 341 (1970). In the Bak case the court held that the issuance of a search warrant represented a conclusive judicial finding of the existence of probable cause and that any subsequent hearing must be limited to an examination of the face of the complaint and warrant. In so holding the court stated:
The majority of this court believes that both constitutions contemplate only that a judicial officer find probable cause for the issuance of a warrant based on the evidence under oath that has been presented to him by the one requesting the warrant. It is contemplated that the credibility of the affiant or others offering evidence is for the judicial officer. If he finds the evidence worthy of belief and sufficient to form probable cause, this judicial determination cannot be relitigated through a later disputing of the evidence.
Decisions on the question have not been consistent. A clear majority, however, favor the view expressed in People v. Bak, supra; Kenney v. United States, 81 U.S. App.D.C. 259, 157 F.2d 442 (1946); United *315 States v. Brunett, 53 F.2d 219 (8 Cir. 1931); People v. Healy, 126 Ill.App.2d 189, 261 N.E.2d 468 (1970); Bowen v. Commonwealth, 199 Ky. 400, 251 S.W. 625 (1923); Head v. Commonwealth, 199 Ky. 222, 250 S.W. 848 (1923); Burrell v. State, 207 Md. 278, 113 A.2d 884 (1955); Armstrong v. State, 195 Miss. 300, 15 So. 2d 438 (1943); Hughes v. State, 85 Old. Cr. 37, 185 P.2d 236 (1947); Young v. State, 74 Okl.Cr. 64, 123 P.2d 294 (1942); O’Brien v. State, 205 Tenn. 405, 326 S.W. 2d 759 (1959); Johnson v. State, 163 Tex. Cr. 101, 289 S.W.2d 249 (1956); Ware v. State of Texas, 110 Tex.Cr.R. 90, 7 S.W.2d 551 (1928); Contra, King v. United States, 282 F.2d 398 (4 Cir. 1960); United States v. Nagle, 34 F.2d 952 (N.D.N.Y. 1929); People v. Alfinito, 16 N.Y.2d 181, 264 N.Y.S.2d 243, 211 N.E.2d 644 (1965).
In our considered judgment Louisiana should subscribe to the majority view. In this State “A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.” La.Code Crim.P. art. 162.
And by Article 703A of the Code of Criminal Procedure a defendant aggrieved by an unconstitutional search and seizure may move to suppress the evidence seized.
Nothing .in this procedural law of Louisiana suggests that the action of the judge who issues the search warrant is subject to review by another judge except on the question of the constitutionality of the search and seizure. So far as we can determine from the Constitution, both State and Federal, the requirement is that the warrant issue upon probable cause, “supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.”
Officer Faulkner presented a lengthy and detailed affidavit in support of the application for the search warrant. The affidavit described the place (919 Governor Nicholls Street, Apt. 4) and the things (narcotics, narcotic paraphernalia and guns) to be seized — both with particularity. There is no doubt, therefore, that the warrant was issued in this case “supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.” The only question remaining for resolution to satisfy all constitutional requirements for the issuance of the warrant is to decide whether the affidavit supports a- finding of probable cause. In our view it clearly does. '
Two confidential informants were relied upon; one anonymous, and the other known to Officer Faulkner to be reliable having furnished information before resulting in arrests and convictions of numerous . narcotic violators. One informer was seen and heard by Officer Faulkner *317 and participated in the investigation which served as a basis for the affidavit. Both informers referred to “pot parties” at the specific address given in the warrant. Both informed that they had been invited to these parties by one or both defendants. Added to this evidence, is the sworn statement of Officer Faulkner depicting the events which he personally observed and experienced: The “strip search” of the informer by which Officer Faulkner was assured that the informer had no narcotics or marijuana on him; his close surveillance of the informer thereafter until he went into the premises at 919 Governor Nicholls Street and later emerged under the scrutiny of Officer Faulkner bearing small quantities of marijuana.
This combination of facts and circumstances, together with the known reputation of Officer Faulkner for integrity and honesty, amply establish that probable cause was shown for the issuance of the search warrant. Thus the constitutional requirement was satisfied for the issuance of the warrant and the search and seizure made upon the authority of that warrant is no longer subject to attack.
It is “elementary” as the court observed in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), that the reviewing court may consider only information brought to the magistrate’s attention to sustain the State’s contention that the warrant is valid under constitutional standards. If this is so, it is equally as “elementary” that the reviewing court may only consider information brought to the magistrate’s attention in a contention by the defendant that the warrant was not issued according to constitutional requirements.
The rule of law that probable cause is a “practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests” is the standard established under the Fourth Amendment obligatory on the States through the Fourteenth Amendment. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).
The constitution requires that probable cause be determined by a “neutral and detached magistrate,” and not by “the officer engaged in the often competitive enterprise of ferreting out crime.” Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637 (1969) and Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). And the Spinelli case makes another pertinent observation in this regard:
established propositions that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, Beck v. Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 228, *319 13 L.Ed.2d 142 (1964); that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, McCray v. Illinois, 386 U.S. 300, 311, 87 S.Ct. 1056, 1062 [18 L.Ed.2d 62] (1967); that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 745 [13 L.Ed.2d 684] (1965); and that their determination of probable cause should be paid great deference by reviewing courts, Jones v. United States, 362 U.S. 257, 270-271, 80 S.Ct. 725, 735-736 [4 L.Ed.2d 697] (1960).
Another holding we find persuasive here in our consideration of the probable cause issue is the statement in McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), quoted from the opinion in State v. Burnett, 42 N.J. 377, 201 A.2d 39 (1964):
The Fourth Amendment is served if a judicial mind passes upon the existence of probable cause. Where the issue is submitted upon an application for a warrant, the magistrate is trusted to evaluate the credibility of the affiant in an ex parte proceeding. As we have said, the magistrate is concerned, not with whether the informant lied, but with whether the affiant is truthful in his recitation of what he was told. If the magistrate doubts the credibility of the affiant, he may require that the informant be identified or even produced.
These expressions concerning probable cause under Fourth Amendment standards convince us that the constitutional requirement of probable cause was satisfied at the time the warrant was issued. The fact that defendants have been able to assemble witnesses to swear almost four months later that defendants were not in their apartment when the informer said that they were, and when the police officer was assured that marijuana was obtained at that address, does not affect the validity of the warrant.
Salutary general principles support this decision. The constitutional requirement for the showing of “probable cause” is to be supported by an affidavit and the independent judgment of a magistrate. This assures to a great extent the truth of the showing that must be made. The penalty for false swearing and the integrity and impartiality of the magistrate were assurances enough in the judgment of the framers of the constitution to give the citizen the protection needed against “unreasonable” searches and seizures. The constitution guarantees no more.
It is material that this criminal proceeding for the issuance of a search warrant end at some point. And so the constitution *321 stopped it with these assurances. No full-blown trial and appeal on every aspect of the issuance of the warrant is assured by the constitution, only the guarantees mentioned may be relied upon.
Important, too, is the need to protect the informer. If the issuance of search warrants based upon information supplied by informers is to continue, the State must not be compelled to disclose the name of its informer in later proceedings testing the truthfulness of the information furnished. The informer system is a vital part of the law enforcement process without which it would be especially difficult to control' drug traffic.
Wigmore stated the reasons:
A genuine privilege, . . . must be recognized for the identity of persons supplying the government with information concerning the commission of crimes. Communications of this kind ought to receive encouragement. They are discouraged if the informer’s identity is disclosed. Whether an informer is motivated by good citizenship, promise of leniency or prospect of pecuniary reward, he will usually condition his cooperation on an assurance of anonymity— to protect himself and his family from harm, to preclude adverse social reactions and to avoid the risk of defamation or malicious prosecution actions against him. The government also has an interest in nondisclosure of the identity of its informers. Law enforcement officers often depend upon professional informers to furnish them with a flow of information about criminal activities. Revelation of the dual role played by such persons ends their usefulness to the government and discourages others from entering into a like relationship.
That the government has this privilege is well established, and its soundness cannot be questioned. (8 Wigmore, Evidence § 2374(f) (McNaughton rev. 1961)).
Another factor which militates against this inquiry into the truthfulness of the affidavit upon which the issuing magistrate based the search warrant is the questionable practice of judges reviewing judgments of judges on the same court on new and entirely different evidence not available to the judge or magistrate issuing the warrant. People v. Bak, 45 Ill.2d 140, 258 N. E.2d 341 (1970); O’Brien v. State, 205 Tenn. 405, 326 S.W.2d 759 (1959).
For the reasons assigned, the judgment of the trial court suppressing the evidence is' reversed and set aside; and the motion to suppress is denied.
DIXON, J., takes no part.