404 So.2d 916 (1981)
STATE of Louisiana
v.
Jeffrey MORSTEIN.
No. 81-KA-0202.
Supreme Court of Louisiana.
September 28, 1981.
*917 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Judith Lombardino, Madeleine Slaughter, Louise Korns, Asst. Dist. Attys., for plaintiff-appellee.
Charles C. Garretson, Bernard A. Horton, New Orleans, for defendant-appellant.
MARCUS, Justice.[*]
Jeffrey R. Morstein was charged in the same information with separate counts of possession with intent to distribute lysergic acid diethylamide and possession with intent to distribute psilocybin in violation of La. R.S. 40:966. In another information, he was charged with possession of marijuana in violation of La. R.S. 40:967. Defendant filed a motion to suppress in each proceeding. After a hearing, the trial judge denied the motions. Thereafter, defendant withdrew his former pleas of not guilty and entered pleas of guilty as charged expressly reserving his right to appeal the court's denial of his motions to suppress.[1] Sentences were imposed by the court on defendant.[2] On appeal, defendant relies on one assignment of error for reversal of his convictions and sentences.
*918 Defendant contends the trial judge erred in denying his motion to suppress physical evidence on the ground that it was seized pursuant to an invalid search warrant. He argues that the affidavit supporting the issuance of the search warrant contained false and inaccurate statements without which the affidavit did not recite facts sufficient to establish probable cause. He further argues the affidavit contained an intentional misrepresentation, thereby requiring that the warrant itself be quashed.
The warrant was issued to search the premises located at 8015 Brevard, Apt. D, New Orleans, Louisiana, for the purpose of seizing certain listed illegal drugs. It was issued upon facts recited in the affidavit by Officers Richard Marino and M. David. The officers asserted in the affidavit that due to information received from two confidential informants and surveillance conducted by them, it was their belief that defendant was selling illegal drugs from his residence. The affidavit was signed and the search warrant was issued and executed on August 1, 1979.
The affidavit generally recited the following facts to establish probable cause for issuance of the search warrant:
(1) On July 24, 1979, Officers M. David and Richard Marino spoke with a reliable confidential informant whose information in the past has led to the arrest and conviction of narcotics violators. The informant advised the officers that a white male known as Jeff was selling cocaine and amphetamines in large quantities from his residence at 8015 Brevard, Apt. D. He stated that Jeff owns the Jeff Construction Company and drives a new red Dodge pickup truck. He further advised that the cocaine is sold in block form and that it is kept in potted plants in the apartment. The informant also stated that on July 23, 1979, he observed the sale of drugs inside the residence.
(2) Upon receiving this information, the officers proceeded to 8015 Brevard St. and observed a red Dodge pickup truck parked in the drive. While checking the location, the officers observed a white male with reddish hair and a beard entering the parked truck.
(3) The officers again contacted the informant who stated that the description was that of Jeff. He further advised the officers that Apt. D was upstairs and that the potted plants were visible from a window facing Brevard St.
(4) On July 25, 1979, between the hours of 8:00 and 9:30 p. m., the officers conducted a surveillance of 8015 Brevard St. From their vantage point, the officers could not observe the front door of the residence but could observe the walkway leading to the door. At 8:45 p. m., the officers observed a white female with blond hair walk up the walkway and disappear in the direction of the front door of Apt. D. About ten minutes later, she reappeared and quickly walked away, looking around as if for someone. At 9:10 p. m., a white male walked up the walkway and disappeared in the direction of the front door of Apt. D. About five minutes later, he reappeared carrying a small package and exited the area very quickly.
(5) On July 30, 1979, the officers again spoke to the informant who stated that on July 29, 1979, he had again observed drugs at 8015 Brevard, Apt. D. He further advised that Jeff was holding the drugs for Kurt Schencker, the manager of the complex. He also stated that he had observed drugs at the residence of Kurt Schencker at 7921 Means St.
(6) On July 30, 1979, another informant related to the officers "almost the same account of the narcotic traffic at the location at 8015 Brevard Apt. # D and also at 7921 Means St." The informant advised the officers of his participation in drug activity at both locations. The informant also "made a written statement and is willing to come forward when ever needed to testify about [his] knowledge and participation in the narcotic activity with Jeff at 8015 Breverd (sic) Apt. # D and also with Kurt at 7921 Means St."
(7) On July 30, 1979, between 9:30 and 11:00 p. m., the officers conducted a surveillance of 7921 Means St. At 9:55 p.

*919 m., they observed a Pontiac Formula pull up in front of the residence. A white female exited the vehicle and entered the residence. She was the same female they observed at 8015 Brevard St. About ten minutes later, she exited the residence, reentered her car and left the area. At about 10:20 p. m., a small red car pulled up to the residence. A white male exited the car and entered the residence. About five minutes later, he exited the residence, reentered the car and left the area. About 10:40 p. m., a brown Olds pulled up to the residence and a white male exited the car. He entered the residence, stayed about ten minutes and then left the area in his car.
Based on the information received from the confidential informants and their observations, the affiants stated that it was their belief that "large scale narcotic traffic" was being conducted at 8015 Brevard, Apt. D, and requested that a search warrant be issued.
At the hearing on the motion to suppress, defendant testified on his own behalf. While admitting his residence at the location named in the warrant, ownership of a red Dodge pickup truck similar to the one described in the affidavit, ownership with his father of Jeffrey Construction Company and having been to the residence of the manager of his apartment complex, defendant denied being present at his apartment on July 23, 25, 29, 1979 (dates when the informant observed the drugs in his residence and a police surveillance was conducted). The defendant also offered the testimony of three witnesses who corroborated his testimony relative to his absence from his apartment on the dates in question.
Officer Richard Marino was also called as a witness for the defense. He testified that two informants had provided him with information. He stated that he believed his informants and that he had secured the search warrant based on the information related to him by them. At this point, defense counsel questioned the witness relative to the statement in the affidavit that a second informant had stated that he was willing to come forward whenever needed to testify. After informing the witness that the state had previously refused to produce the informant, defense counsel asked the officer if he had "any objection to this informant coming to court." The state's objection was sustained by the trial judge as were other objections to defense questions as to why the informant was not produced.
Constitutional provisions insure a person from unreasonable search and seizure of his house, papers and effects. No such search or seizure shall be made except upon warrant issued upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized. U. S. Const. amend. IV; La. Const. art. 1, § 5. Conformably, our Code of Criminal Procedure in art. 162 provides in pertinent part:
A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.
We have held that probable cause exists when the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been committed. State v. Mena, 399 So.2d 149 (La. 1981); State v. Wichers, 392 So.2d 419 (La. 1980); State v. Baker, 389 So.2d 1289 (La. 1980); State v. Richards, 357 So.2d 1128 (La. 1978). The judicial officer must be supplied with enough information to support an independent judgment that probable cause exists for the issuance of a warrant. Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); State v. Mena, supra; State v. Wichers, supra; State v. Baker, supra; State v. Richards, supra.
Defendant contends the trial judge erred in denying the motions to suppress the evidence. However, defendant does not contend that the affidavit supporting issuance of the search warrant failed to recite facts establishing probable cause. Rather, he *920 seeks to impeach the veracity of the affidavit supporting the issuance of the search warrant.
It is well established that the credibility of the affiant's informant or the correctness of the information furnished by the informant may not be attacked on a motion to suppress. State v. Babbitt, 363 So.2d 690 (La. 1978); State v. Tassin, 343 So.2d 681 (La. 1977) (on rehearing); State v. Giordano, 284 So.2d 880 (La. 1973); State v. Melson, 284 So.2d 873 (La. 1973). However, the credibility of the affiant himself may be traversed on a proper showing of "a genuine issue on the affiant's veracity supported by convincing allegations of fact which, if proven, would establish the falsity of the affidavit." State v. Cox, 330 So.2d 284, 292 (La. 1976) (on rehearing); State v. Giordano, supra. We stated in Melson:
... There are ... factors which justify treating the veracity of the affiant and the veracity of his informer differently. There is sometimes a need to protect the identity of informers. But see Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). Criminal activity in today's society seems to demand speed and efficiency in police work, consistent with constitutional standards; the constitutional prohibition against the issuance of search warrants is relaxed when there is probable cause for a magistrate to act, a finding reached with much less reliable evidence than real and actual cause.

See also McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).
In State v. Rey, 351 So.2d 489 (La. 1977), we first observed that minor inaccuracies in the affidavit may not affect the validity of the search warrant. We further stated that, when faced with an affidavit containing inaccurate statements, the court will excise the inaccurate statements and then examine the residue to determine if it supports a finding of probable cause. If, however, the misrepresentations were intentionally made, a warrant based on such an affidavit must be quashed.[3]
In the instant case, defendant first contends that the affidavit contains false statements regarding the presence of the confidential informant in his apartment on July 23, 1979 and July 29, 1979 without which the affidavit would not recite facts sufficient to establish probable cause. These alleged false statements were not that of the affiant's and thus do not go to the integrity of the affidavit. Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); State v. Babbitt, supra. Defendant has the right only to traverse allegations of the affiant upon a proper showing; he may not controvert those of the confidential informant. McCray v. Illinois, supra; State v. Babbitt, supra; State v. Melson, supra.
Defendant also contends that the affidavit contains inaccurate statements of fact by the affiants relative to their observations of his apartment on July 25, 1979 (date of the alleged police surveillance). It is not contended that these inaccuracies were intentionally made. There was no showing at the suppression hearing that any of these representations were inaccurate. Moreover, any inaccuracies in their observations were of no moment as ample *921 probable cause existed for the issuance of the warrant based upon information supplied by the informants.
Finally, defendant contends the affidavit contains an intentional misrepresentation by the affiants as to the willingness of the second informant "to come forward when ever needed to testify." Defendant made no showing at the suppression hearing that this allegation was false, much less intentionally made.
In sum, defendant's contentions are without merit. Defendant has failed to impeach the veracity of the affidavit supporting the issuance of the search warrant. Hence, the trial judge correctly denied defendant's motions to suppress.

DECREE
For the reasons assigned, defendant's convictions and sentences are affirmed.
DIXON, C. J., concurs.
NOTES
[*] Judges Grover L. Covington, Luther F. Cole and J. Louis Watkins, Jr. of the Court of Appeal, First Circuit, participated in this decision as associate justices ad hoc, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche, and Lemmon.
[1] State v. Crosby, 338 So.2d 584 (La. 1976).
[2] In connection with his convictions for possession with intent to distribute lysergic acid diethylamide and psilocybin, defendant was sentenced on each conviction to serve three years at hard labor and to pay a fine of $1,000 or in default thereof to serve 30 days in the parish prison. He was further ordered to pay court cost of $84 or in default thereof to serve 30 additional days in the parish prison. The court suspended execution of the imprisonment portion of the sentences and placed defendant on supervised probation for a period of five years. As one of the conditions of probation, defendant was ordered to pay $2,000 to the court in restitution to defray the cost of operation of that court. The court expressly directed that the sentences were to run concurrently with each other. In connection with his conviction for possession of marijuana, defendant was sentenced to serve three months in parish prison; however, the court suspended execution of the sentence imposed and placed defendant on unsupervised probation for a period of six months. The court expressly directed that the sentence was to run concurrently with the sentences imposed on defendant in the other case.
[3] In Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the United States Supreme Court held that where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the fourth amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search warrant excluded to the same extent as if probable cause was lacking on the face of the affidavit. Thus, it is apparent that the Louisiana law in this area fully accommodates the constitutional safeguard set forth in Franks. It was also noted in Franks that "[t]he deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant."