330 So.2d 284 (1975)
STATE of Louisiana, Respondent,
v.
Morris W. COX and Rose Ann Garrett, Relators.
No. 56098.
Supreme Court of Louisiana.
November 3, 1975.
Dissenting Opinion November 14, 1975.
Dissenting Opinion November 18, 1975.
On Rehearing March 29, 1976.
Anthony J. Bruscato, Bruscato & Loomis, Monroe, for defendants-relators.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., Brian E. Crawford, Asst. Dist. Atty., for plaintiff-respondent.
TATE, Justice.
The defendants Morris Cox and Rose Garrett were convicted of possession of marijuana, La.R.S. 40:966, and sentenced *285 respectively to ninety and thirty days in the parish jail in addition to fines of $300. We granted certiorari to review substantial contentions of trial error, 312 So.2d 872 (1975), and we now reverse and remand for a new trial.
Trial was had on an information charging four defendants with possession of marijuana on November 23, 1974: two girls, Miss Garrett and Miss Almond; and two young men, Cox and Anderson. At the present trial, Cox and Miss Garrett were found guilty and Anderson acquitted. At a later trial, Miss Almond was convicted.

The Issues
Certain marijuana was seized by the officers as a result of a search of Miss Garrett's apartment authorized by a search warrant. She attacks the validity of the search, as illegally based (a) on an affidavit insufficient on its face to justify it and (b) on false information misrepresented by the affiant who secured the warrant.
Certain other marijuana was seized from Cox's automobile, parked outside the Garrett apartment, as a result of a warrantless search. Cox attacks this warrantless search as illegal.

1.
The incidents giving rise to this charge occurred as follows:
Based on an affidavit by Officer Kelly, a search warrant was issued to search a described apartment in which Miss Garrett and Miss Almond lived. The affidavit was issued on the basis of information allegedly given to Kelly by a confidential informant (described as reliable on the basis of past information found proven as true by other independent sources and as a result of prior searches made on the basis of warrants secured based on information from the informant proven as reliable by the searches).
According to the affidavit, the informant supplied the information to Officer Kelly as based on his own personal knowledge: "Within the last 48 hours your affiant [Officer Kelly] has been contacted by a reliable confidential informant. The informant stated the following: Within the last 48 hours the informant has been on the premises of a residence [particularly described]. . . . While on said premises the reliable confidential informant observed a quantity of marijuana being at least several ounces in open view and in the possession of one white female known to the reliable confidential informant as Rose Ann Garrett, in the possession of one white male known to the reliable confidential informant as Morris Cox, and in the possession of another white female known to the reliable confidential informant as Pat Almond."

2.

The Defendant Garrett's Contentions
We reject Miss Garrett's attack on the facial insufficiency of the affidavit of probable cause upon the search warrant was based. We believe the affidavit adequately sets forth facts which afforded the issuing magistrate a factual basis both to find the informant credible and the information given by him credible. State v. Humble, 309 So.2d 138 (La.1975); State v. Paciera, 290 So.2d 681 (La.1975).
However, we believe her conviction must be set aside and a new trial granted because the trial court, under the circumstances shown, incorrectly prevented her from attacking the credibility of the affiant, Officer Kelly. Her assignment of error in this regard is well-founded.
She filed a motion to suppress the product of the search, alleging, inter alia, "that the information was not furnished to Detective Pat Kelly by any informer and that Detective Kelly either intentionally or unintentionally misrepresented the facts in executing the oath in support of the search *286 warrant." In support of this allegation, she produced evidence from the defendants that the only persons in the apartment during the 48 hours described by the confidential informer were the four defendants, with the only outsider present at any time during that interval being a Stephen Fury. Fury denied that he was the informer.
Officer Kelly was then recalled to the stand. He admitted that Fury was not his informant. The trial court denied further questioning on the issue of the truthfulness of Kelly's statement that he had been furnished the information sworn to by a confidential informer. The trial court held that Miss Garrett had made an insufficient affirmative showing that there was a genuine issue that Officer Kelly had sworn untruthfully that he had been furnished the information set forth as obtained from a confidential informer.
This ruling was erroneous.
The credibility of the affiant's informant or the correctness of the information furnished by the informer may not be attacked on a motion to suppress. State v. George, 273 So.2d 34 (La. 1973); State v. Anselmo, 260 La. 306, 256 So.2d 98 (1971), as interpreted by State v. Giordano, 284 So.2d 880 (La.1973) and State v. Melson, 284 So.2d 873 (La.1973).
However, as Giordano and Melson held, upon proper allegations and showing of a genuine issue of the falseness of the affidavit, allegations made therein by the affiant may be traversed as untruthful on the affiant's part. These decisions point out the constitutional and statutory reasons which cannot permit untrue ex parte allegations made by an affiant to be exempt from judicial inquiry. Misrepresentation by an affiant cannot justify the invasion of an individual's home or his privacy when there is in fact no true probable cause for the invasion, as required by our state and federal constitutions.
The testimony produced by Miss Garrett made a prima facie showing, under appropriate allegations of her motion, that the affiant had sworn falsely that an informer had been present in the apartment and had seen the marijuana illegally possessed. Testimony introduced on her behalf negatived the presence and possibly the existence of such an informer.
Her contention that her home was invaded on the basis only of suspicion, in violation of the state and federal constitutions, was shown to have at least prima facie validity. She should not have been barred from further development of the facts surrounding the seeming untruthfulness of the affiant's affidavit and the consequent illegality of a warrant secured by untruthful allegations. Further, if the affiant-witness had been permitted to answer the questions indicated, perhaps a truthful basis for the information of his affidavit might have been disclosed and justified as constitutional the search based upon the warrant thereby secured.
The conviction of Miss Garrett must be reversed, and her case remanded for a new trial.

3.

The Defendant Cox's Contention
Marijuana was seized from the defendant Cox's motor vehicle without a warrant under the following circumstances:
The search warrant was secured between three and four o'clock in the afternoon. At 12:40 a.m. in the morning, Kelly and four other police officers drove up to search the apartment of the two girls. No one was home. The officers saw a Ford van parked in the yard outside the apartment house.
The van was owned by the defendant Cox. The officers knew the van belonged to Cox, a former state policeman. The windows of the van were up.
*287 The officers approached the van, saw Cox and Anderson inside, and told them to get outside. The officers frankly admitted that they intended to detain Cox and Anderson until the girls showed up, as Cox testified, so as to prevent them from going away and possibly informing the girls not to come. The officers admitted that, at this time, they had no basis for arresting Cox and Anderson, and that they had no arrest warrant for Cox or search warrant for his van.
Cox testified that Officer Breaux told him he would have to search the van and that, if Cox had anything in the van, it would make it a lot easier if he just gave it to Breaux. Cox then took a bag of marijuana from under the carpet and gave it to the officer.
Three of the officers testified that Breaux first told Cox he did not have to permit a search, and that Cox then consented to it, reaching in and handing Breaux the bag. Nevertheless, we do notice that Officer Breaux admitted that he had told Cox, "Do you have anything in there you are wanting to declare to keep us from having to, you know, make much of a mess?" Breaux testified, however, that he made this observation after Cox had already consented to the search (i.e., not before, as Cox testified).
The state does not cite any authority by which the officers had a right to arrest Cox, without a warrant, simply because he was parked in his own automobile outside his girlfriend's house. Although the search warrant gave them a right to search the girl's apartment, it did not justify a search of the van parked outside,State v. Massey, 310 So.2d 557 (La.1975), nor did they have any probable cause to do so or to search or arrest Cox himself, State v. Saia, 302 So.2d 869 (La.1974).
Whatever right the police had for temporary questioning of Cox in a public place, La.C.Cr.P. art. 215.1, it did not extend to the right to detain him until the girls arrived; and, further, no basis for reasonable suspicion is shown (or even claimed) that he had or was about to commit any crime, as required by the statute even for such temporary questioning. Neither is any probable cause shown or even claimed to arrest without a warrant for the unverified misdemeanor allegedly reported by the unidentified informer. La.C.Cr.P. art. 213.
The arrest (detaining) of Cox without a warrant is clearly illegal and unauthorized by the law of Louisiana and of the United States. The "consent" to search was the fruit of this illegal arrest and cannot justify the admission into evidence the product of such a coerced search. The Fourth Amendment's protection of Americans in the security of their persons and property against unlawful action by state officers prevents admission into evidence of the product of an illegal arrest, as the United States Supreme Court recently held unanimously in Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). See also Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Similar provisions in our state constitutions provide like guarantees, with like effects for arbitrary violations of the rights of individuals by officials of government. La.Const. of 1921, Art. I, Section 7; La.Const. of 1974, Art. I, Section 5.
The motion to suppress filed by the defendant Cox should have been sustained. His conviction on the basis of evidence thus illegally obtained must be reversed.

Decree
For the reasons assigned, the convictions of the defendants for the misdemeanor charged must be reversed, and their cases remanded for new trials.
Reversed and remanded for new trials.
*288 SANDERS, C. J., dissents and will assign written reasons.
SUMMERS, J., dissents and will assign written reasons.
MARCUS, J., dissents.
SANDERS, Chief Justice (dissenting).
The majority has upset the conviction of both defendants, but on different grounds. The conviction of Rose Ann Garrett is reversed because of a conclusion that the trial judge unduly restricted the attack upon the credibility of the police officer who made the affidavit for the search warrant. The conviction of Morris W. Cox is set aside on the ground that the marijuana was obtained in an unconstitutional search of his automobile. I disagree with these holdings, being of the opinion that the factual findings of the trial judge are correct and that, based on these findings, the convictions should be sustained.
The law relating to the Garrett conviction is clear. The correctness of information furnished by an informer to a police officer and included in a search warrant affidavit may not be attacked in a motion to suppress. State v. George, La., 273 So.2d 34 (1973); State v. Anselmo, 260 La. 306, 256 So.2d 98 (1971).
Perjury of the affiant police officer can be used in an attack upon a search warrant, but only after the defendant has demonstrated "a genuine issue." State v. Giordano, La., 284 So.2d 880 (1973).
In his well-written Per Curiam, the trial judge correctly applies the law to the circumstances of the present case, as follows:
"The motion to suppress merely alleged that the information furnished by the affiant in obtaining the search warrant was false, but there were no facts alleged upon which this conclusion was based. The first witness called by the defense on the trial of the motion was that affiant. Defense counsel sought to illicit [sic] from him the identity of the informant, but was not allowed to do so. Then, it was explained that only one person other than the four arrested were present at the searched apartment during the 48 hours prior to issuance of the warrant (the affidavit stated the informant was there within that period). Counsel stated that he intended to show that the one other person did not give the affiant information.
"At that point, the Court held that the mere conclusion of falsity as alleged was not sufficient to permit the defendants to attack the credibility of the affiant by examining him directly  that there must first be a factual foundation to establish some reason to attack his veracity and that such foundation must be established independently of the affiant.
"There was then presented the testimony of three of the four defendants arrested during the search (one defendant being absent and having been called on her bond), and of Stephen Fury. The three defendants all testified that Fury was the only `outsider' in the apartment during the critical 48-hour period; and Fury and the three defendants all denied that they had given the affiant any information. It is to be noted, however, that when Rose Ann Garrett (one of the defendants) was cross-examined by the state, she admitted that all four defendants had been present at several times during the 48-hour period and that marijuana was also openly displayed during that period.

"The defense recalled Officer Kelly (the affiant) who admitted that Fury was not his informant. He was never directly asked if the absent defendant were his informant, and the Court would not allow generalized questions seeking merely to explore the officer's mind, procedures and contacts. At that point in the trial, the defense evidence had not only failed to raise a genuine issue as to the truthfulness of affiant's sworn statement but *289 there had actually been an admission by the tenant of the apartment of facts reported by the informant to the affiant.
"For these reasons, the Court not only refused to permit further interrogation of the affiant but also denied the motion to suppress the evidence seized in execution of the warrant."
The circumstances leading to the seizure of marijuana from the Cox automobile are these. The police officers received a valid search warrant to search an apartment located at 1403 Jackson Street in Monroe. The affidavit supporting the search warrant read in part as follows:
"Within the last 48 hours the informant has been on the premises of a residence being one of the apartments located in a white frame house on Jackson Street, Monroe, Louisiana said apartment being located at 1403 Jackson Street, Monroe, Louisiana and more particularly described as being the only apartment with an entrance facing Jackson Street. While on said premises the reliable confidential informant observed a quantity of marijuana being at least several ounces in open view and in the possession of one white female known to the reliable confidential informant as Roseanne Garrett, in the possession of one white male known to the reliable confidential informant as Morris Cox. ..."
They undertook to execute the warrant on November 23, 1974, arriving at the apartment about 12:30 a. m. Upon leaving their vehicle, the officers saw and recognized Morris Cox, a former law enforcement officer and one of the persons named in the search warrant affidavit as a possessor of marijuana on the premises. Cox and a companion were seated in Cox's automobile van in the yard of the apartment to be searched. What followed is best described by the trial judge in connection with his findings of fact:
"Since the officers were present to execute the warrant and the occupants of the vehicle were waiting outside, it was obvious to the Court that it was imperative they be removed from the vehicle and `detained' and `patted down' to avoid their tipping off the occupants of the apartment or posing a threat to the activity or to the officers' safety. Since Cox was a former police officer who was named by the informant as having been in possession of marijuana earlier, there was probable cause to suspect either that he was involved with the occupants of the apartment or independently in such illegal activity.
"Thus, Sergeant Breaux requested permission to search his car, which was granted. He even went so far as to offer Cox the opportunity to remove or declare anything in the vehicle so as to avoid disturbance during the search. At that point, Cox voluntarily removed a package of marijuana from under the floor covering beside the driver's seat and handed it to an officer. The consent search led to the discovery of a second package in the same general hiding place."
After the search, the officers informed Cox that he was under arrest for the possession of marijuana.
I know of no adequate reason to reject the finding of the trial judge that consent for the search was freely and voluntarily given. His finding, always entitled to great weight, is reinforced by the circumstance that the vehicle owner who gave consent was a former law enforcement officer, fully acquainted with his constitutional rights. See Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).
The majority apparently makes the validity of the consent, though freely given, depend upon the legality of the action of the officers in requesting the defendant and his companion to leave the vehicle. It *290 is true that some restraint of the person occurred prior to the consent-search. Every restraint of the person without an arrest warrant, however, is not a violation of constitutional safeguards. The Fourth Amendment of the United States Constitution prohibits only unreasonable seizures of the person. See Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Cook, Constitutional Rights of the Accused: Pre-Trial Rights, § 5, p. 28 (1972).
As noted by the trial judge, the restraint imposed by the officers upon defendant represented a minimal invasion of his freedom of action. It was designed to protect the safety of the officers and to avoid the frustration of their search by warning or otherwise. It could easily, in my opinion, be classified as an investigatory stop. Such a stop is specifically authorized by Article 215.1 of the Louisiana Code of Criminal Procedure upon reasonable suspicion. See State v. Winesberry, 256 La. 523, 237 So.2d 364 (1970). The search warrant affidavit implicating Cox in possessing marijuana was more than adequate under the circumstances to provide a basis for reasonable suspicion.
In State v. Jefferson, La., 284 So.2d 882 (1973), this Court held:
"The Fourth Amendment to the United States Constitution protects the people against `Unreasonable searches and seizures'. (Italics ours.) The United States Supreme Court has held that a warrantless investigatory detention, reasonably limited in scope by its merely investigatory purposes, does not offend this prohibition. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, (1968); Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). This investigatory detention for purposes of interrogation extends to automobiles and their occupants. Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). See also: State v. Williams, 262 La. 317, 263 So.2d 306 (1972); State v. Amphy, 259 La. 161, 249 So.2d 560 (1971); State v. Winesberry, 256 La. 523, 237 So.2d 364 (1970)."
The majority apparently recognizes the right of the police officers to make an investigatory stop, but expresses the view that "it did not extend to the right to detain him until the girls arrived." As I view the record, the investigative action was taken and search made within minutes after the officers arrived. After the search, the defendant was placed under arrest for probable cause. Thus, the defendant was held in a valid arrest status until the occupants of the apartment arrived a few minutes later.
I am convinced that the detention of defendant was legal.
Assuming, however, that it was illegal to restrain the defendant during the short interval prior to the search, that restraint did not vitiate the consent clearly established by the record.
The state and federal jurisprudence supports the view that consent to search given after an illegal detention is nonetheless valid under circumstances showing no exploitation of the illegality. Phelper v. Decker (5th cir.) 401 F.2d 232 (1968); Bailey v. State, Fla.App., 295 So.2d 133 (1974); James v. State, Fla., 80 So.2d 699 (1955); Annot., 9 A.L.R.3rd 858, 887 at § 9.
At the time the officers requested defendant to get out of the automobile, they immediately advised him of his constitutional rights. There was no handcuffing, deceit, extended interrogation, or other coercive measures. There was no exploitation of the restraint. Defendant, himself, disclosed his possession of marijuana and delivered the first package to the law enforcement officers.
Under these circumstances, I would hold that the consent was not tainted by the action of the officers.
*291 For the reasons assigned, I respectfully dissent.
SUMMERS, Justice (dissenting).
I dissent for the reasons assigned by the Chief Justice.

ON REHEARING
SUMMERS, Justice.
Defendants applied to this Court for certiorari to review their convictions and sentences for possession of marijuana, arguing three assignments of error: 1) the search warrant and the affidavit in support thereof were facially insufficient to render a search warrant valid as a matter of law; 2) the trial judge erred in denying the right to traverse during hearing the factual allegations of the affiant in an affidavit to support a search warrant when the factual allegations of the affidavit had been put at issue by the motion to suppress evidence obtained upon the authority of the search warrant; and 3) the trial court erred in finding the police officers had the right to detain a person in a vehicle found adjacent to a residence, which residence is to be searched pursuant to a search warrant, subsequently search the vehicle which that person is occupying, and then arrest that person as a result of the search of his vehicle.
Based upon these assignments of error and the unilateral representation of the applicants we granted certiorari. Upon receipt of the record and after a hearing we rejected the first assignment of error. However, by a divided Court, the second and third assignments were found to be meritorious. Rehearing was granted to reconsider the Court's decision on these last two assignments of error, principally for the cogent reasons and analysis of these issues by the Chief Justice in his dissenting opinion. After reconsideration, the Court's original opinion is reversed and set aside and the convictions and sentences of the defendants are affirmed.
Based on an affidavit signed by Detective Pat Kelly of Ouachita and Morehouse Parishes' Strike Force on November 22, 1974, the district judge in Ouachita Parish signed a search warrant authorizing a search of an apartment occupied by Rose Ann Garrett at 1403 Jackson Street, Monroe, Louisiana for controlled dangerous substances, particularly marijuana.
Among other facts, Detective Kelly's affidavit recites that a reliable confidential informant advised him within the last 48 hours that he had been at the apartment at 1403 Jackson Street and observed a quantity of marijuana in open view in the possession of Rose Ann Garrett, Morris Cox and Pat Almond.
With the authorization the search warrant provided, Detective Kelly and other officers some time thereafter proceeded to 1403 Jackson Street to execute the search. Upon arrival at 12:40 a. m. they observed a Ford Van parked in the front yard at 1403 Jackson, occupied by its owner Morris Cox and one David Anderson. Morris Cox was a former police officer known to Detective Kelly and known to be the owner of the van. Cox's name was also mentioned in Kelly's affidavit.
Upon request of the officers, Cox and Anderson got out of the vehicle and were advised of their constitutional rights, after which Cox voluntarily consented to a search of his van. He was then asked if he would "declare" any contraband items prior to the search, whereupon he reached into the vehicle, removed a plastic bag of marijuana from under the floor mat and handed it to the officers. Thereafter, while searching the interior of the van, officers found another bag of marijuana under the front floor mats and a marijuana smoking pipe between the seats. Cox and Anderson were then placed under arrest for possession of marijuana.
At approximately 12:50 a. m. Rose Ann Garrett and Patsy Almond arrived at the Jackson Street apartment. Both were brought inside and advised of their constitutional *292 rights and the reason for the search. The search was then conducted by the officers and resulted in the seizure of a marijuana smoking' pipe containing marijuana found in plain view on the mantel in the living room. A cosmetic kit belonging to Rose Ann Garrett containing marijuana and a "roach clip" were also found. Garrett and Almond were then arrested for possession of marijuana.
Cox and Garrett were tried and found guilty of the charge on February 12, 1975. Anderson was found not guilty and Patsy Almond was absent, called on bond, and at a later date found guilty of possession of marijuana on the same facts.

I.
Prior to trial both Garrett and Almond filed motions to suppress based upon allegations that there was no probable cause for the issuance of the search warrant because the affidavit supporting its issuance was defective in that it contained misrepresentations. Thus, according to the motion, any evidence obtained as a result of the execution of the search warrant was illegally obtained.
The trial judge denied the motion and the second assignment of error urged in the application for certiorari was reserved.
As the trial judge set forth in his per curiam to this assignment, the motion to suppress merely alleged that the information furnished by affiant in support of the issuance of the warrant was false. However, no facts were alleged to support these conclusions. When Detective Kelly was called as a witness by the defense, defense counsel sought to elicit from him the identity of the informer, but was not allowed to do so. The defense then sought to establish by the testimony of the defendants and Anderson that only one person other than the four mentioned in the affidavit was present in the apartment during the 48 hour period mentioned in the affidavit and that this person was one Stephen Fury.
When Rose Ann Garrett was cross-examined by the state she admitted that all four defendants had been present at several times during the 48 hour period and that marijuana was openly displayed during that period.
Although defense counsel obtained an admission from Detective Kelly that Fury was not his informant, he did not ask if the absent defendant Patsy Almond was his informant. Generalized questions seeking merely to explore the officer's mind, procedure and contacts were not allowed thereafter by the trial judge. A fishing expedition by defense counsel was not permitted. The trial judge concluded, therefore, that the defense had failed to raise a genuine issue as to the truthfulness of Officer Kelly's sworn statement. Moreover, he found to be relevant the fact that there had actually been an admission by Rose Ann Garrett that marijuana was in open display while the four arrested parties were in the apartment during the 48 hour period mentioned in Detective Kelly's affidavit. The motion to suppress was denied.
There is nothing in the record which would persuade this Court to reject the fact finding prerogative of the trial judge, which is the principal basis for his denying the motion.
Defendant cannot avail himself of the right to controvert the truthfulness of an affiant in a sworn affidavit in support of a search warrant without demonstrating a genuine issue on the affiant's veracity supported by convincing allegations of fact which, if proven, would establish the falsity of the affidavit. State v. Giordano, 284 So.2d 880 (La. 1973). The paramount public interest recognizes the need to protect and promote a reliable informer system. If the issuance of search warrants based upon information supplied by informers is to continue the state must not be compelled to produce its informer to refute unsupported allegations of falsification by affiants in support of search warrants at every hearing *293 on a motion to suppress. State v. Anselmo, 260 La. 306, 256 So.2d 98 (1972).
There is no merit to this assignment.

II.
Defendant Cox filed a motion to suppress alleging that there was no probable cause for the search of his van, no search warrant had been issued to authorize the search and that the search was not incident to a lawful arrest. Therefore, any evidence obtained as a result of said search was illegally obtained and should be suppressed. The motion was denied.
The trial judge found as a fact that the officers executing the search of Cox's van requested permission to search and Cox granted permission. Moreover, Cox voluntarily handed over a package of marijuana from under the floor covering in the van. The consent to search led to the discovery of a second package in the van.
It is not necessary, therefore, to inquire into the validity of the detention of Cox prior to the consent he voluntarily gave to the search. Consent to search given after an illegal detention is nonetheless valid under circumstances showing no exploitation of the illegality. Phelper v. Decker, 401 F.2d 232 (5th Cir. 1968); Bailey v. State, 295 So.2d 133 (Fla.App. 1974); James v. State, 80 So.2d 699 (Fla. 1955); 9 A.L.R. 3rd 858, 857 at § 9.
As a former police officer Cox was knowledgeable in matters of this nature and at the very outset of the detention he was advised of his constitutional rights. It could hardly be said that the officers exploited the detention, if it could be considered illegal, by asking Cox, after he had consented to the search, "Do you have anything in there you are wanting to declare to keep from having to, you know, make much of a mess?"
This assignment of error has no merit.
For the reasons assigned, the original opinion rendered herein is reversed and set aside and the convictions and sentences are affirmed.
TATE, J., dissents for the reasons assigned on original hearing.
DIXON, J., dissents.
DENNIS, J., concurs and assigns reasons.
CALOGERO, J., dissents, being of the opinion that the opinion on original hearing was correct in all respects.
DENNIS, Justice (concurring).
As I view the record, the detention of the defendant Cox was not unlawful. Therefore, I find it unnecessary to reach the issue of whether a consent to search following an illegal detention can be considered valid.
I respectfully concur.