GOTHARD, Judge.
Appellants, William P. Bishop and Robert S. Davis,[1] were charged by bill of information, filed September 23, 1988 in the 24th Judicial District Court, with possession of L.S.D.[2] with the intent to distribute, a violation of LSA-R.S. 40:966.
Both defendants were arraigned and entered “not guilty” pleas to the charges. This appeal was taken from the trial court’s adverse ruling on the defendants’ motion to suppress.
Robert Davis subsequently pled guilty to the reduced charge of possession of L.S.D., reserving his right to appeal the adverse ruling on the motion to suppress. William Bishop was tried on June 12, 1989 and found guilty of the same charge.
Both defendants were sentenced on August 25, 1989 to serve three years at hard labor. In each case, execution of the sentence was suspended, and the defendants were placed on active probation for a term of three years. Several special conditions of probation were imposed, including a $500.00 fine, various fees and costs, and attendance at a substance abuse clinic if deemed necessary by the probation department. Additionally, Bishop was ordered to obtain a graduate equivalency diploma.
The sole issue raised by the appellants is whether there was reasonable cause to justify the actions of the law enforcement officers in making an investigatory stop of the defendants.
FACTS
Evidence brought out at the suppression hearing reveals that on August 27, 1988, the Jefferson Parish Sheriff’s Office was conducting a surveillance of an apartment on the second floor of a four-plex at 4314 Karen Street on the east bank of Jefferson Parish. The occupants of the apartment had been suspected of drug trafficking and an intelligence purchase had confirmed the agents’ suspicions. While a warrant was being prepared and brought to a judge for signature, agent Kenneth Soutullo was observing continuous activity in the area of the apartment from his vehicle parked about sixty yards away from the building. From his vantage point, however, he could not see the rear of the building or the doorway of the suspect apartment.
At about 9:20 p.m. Soutullo was joined by two other agents, also in an unmarked unit. Shortly thereafter the agents saw a small Mazda pickup truck occupied by three persons stop in front of the building in which the apartment was located. A white male exited the truck and went to the rear of the building. A short time later he reappeared from behind the apartments, looked both ways, and got back into the truck.
*344 Believing that the occupants of the truck were engaged in either the sale or purchase of narcotics, Soutullo and the other two agents followed the Mazda. While “tailing” the truck, the agents were informed that the warrant for the apartment had been signed and was about to be executed. Fearing that the occupants of the truck may have removed drugs from the apartment, the agents stopped the truck. Soutullo identified himself as a police officer, stated that the police were conducting a narcotics investigation, and advised the occupants of their Miranda rights. A pat-down search for weapons was made. The agents then separated the three (two males and one female) and Soutullo began questioning them regarding their recent whereabouts and their destination.
During the brief interrogation Soutullo asked Bishop if he had any drugs on his person or in the vehicle. Bishop replied that he did not use drugs and offered to let the agent search his truck. Soutullo questioned the other occupants and, after receiving evasive answers, returned to Bishop and asked for consent to search. Bishop assented to the request. Soutullo then walked to the passenger side of the truck to begin the search; on the floorboard he observed and seized a cellophane packet containing a piece of paper sectioned off into a hundred squares with red and green diamonds, which he identified as L.S.D.
The three were arrested for possession of L.S.D. with the intent to distribute and transported for booking. The prosecution of Davis and Bishop followed.
SEARCH AND SEIZURE
The appellants contend that the stop of the truck was not based upon reasonable cause and the resultant search and seizure was unlawful.
Pursuant to C.Cr.P. art. 215.1, “A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address and an explanation of his actions.” The article further provides that, “When a law enforcement officer has stopped a person for questioning ... and reasonably suspects that he is in danger he may frisk the outer clothing of such person for a dangerous weapon.”
“Reasonable cause” for an investigatory stop is something less than probable cause and must be determined by considering the facts in each case. The police officer must have articulable knowledge of particular facts to reasonably suspect the detainee of criminal activity so as to justify the infringement on the individual’s right to be free of governmental interference. Such reasonable cause may be based on the observations of fellow police officers. State v. Taylor, 501 So.2d 816 (La.App. 4th Cir.1986) and cases cited therein.
In Taylor, supra, the court determined that sufficient probable cause to effect an investigatory detention had been established where an officer had observed the defendant stop his van in front of a residence under surveillance, glance up and down the street, perform an identification procedure at the mailbox, enter the residence and exit five minutes later, placing something in his pants pocket.
In the present case, Soutullo, while knowing that one of the apartments in the building was a drug outlet, observed only that the passenger of the stopped vehicle walked around to the rear of the building but did not see him enter any apartment, much less the apartment under surveillance. He observed no drug transaction by the occupants of the car, nor even any hand motion suggestive of a drug transaction. Further, nothing articulated at the supression hearing affirmatively linked the defendants to the drug activity at the apartment. For these reasons we find it doubtful that reasonable cause for an investigatory stop existed when the officers stopped the defendants.
In giving reasons for judgment from the bench, the trial judge stated that he based his decision upon Bishop’s consent to the search:
Warrantless searches are deemed, per se, unreasonable unless the State can prove that the search falls within one of *345 the well delineated exceptions set down by the United States Supreme Court.
The State has the burden of proof on this issue. One of the exceptions to the lack of warrant rule is certainly consent.
Before me today is testimony of a police officer that he obtained consent of the driver to search the vehicle. That remains unrebutted today. I can only assume that the consent was therefore freely given.
I did not hear from Mr. Bishop that he failed to give consent, and as I said, I can only assume he gave it freely.
Since consent was given, I find that the search was conducted lawfully. Deny the motion to suppress.
The Supreme Court, in State v. Cox, 330 So.2d 284, 293, on rehearing (La. 1976), held that consent to search after an illegal detention is nonetheless valid under circumstances showing no exploitation of the illegality. See also State v. Freeman, 503 So.2d 753 (La.App. 3rd Cir.1987). The validity of a search pursuant to a defendant’s consent hinges on the voluntariness of the consent, which is a question of fact to be determined by the court under the facts and circumstances of each case. The factual determination of the trial judge is entitled to great weight upon review. State v. Walker, 530 So.2d 1200 (La.App. 2nd Cir.1988), writ denied 532 So.2d 763 (La.1988), and cases cited therein. Factors to be considered are whether the officers adequately informed the person that he need not comply with the request, the temporal proximity of the illegality, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct. State v. Raheem, 464 So.2d 293 (La.1985).
Jo Lynn Commings, a narcotics agent in the Jefferson Parish Sheriff’s Office, testified that she and another agent assisted officer Soutullo in surveillance from another vehicle and followed the defendants’ truck. She stated that they used their lights and siren to stop the vehicle and that she ran toward the defendants with her gun drawn as they were getting out of the truck. In her opinion the defendants were not free to leave.
We find that under the circumstances the consent to search was not voluntary, for the following reasons. Although Bishop volunteered the search when first questioned, it was not until after the other two occupants of the car had been interrogated that consent was requested by Soutullo and the search actually took place. Further, it was not demonstrated that Bishop was advised of his right to refuse consent, although the defendants were advised of their Miranda rights. The search was in close temporal proximity to the illegal detention and the only events between the stop and consent upon request were the arrival of additional officers and the questioning of the other occupants of the car.
Accordingly, for the reasons assigned above, the convictions and sentences of the two appellants are vacated.
CONVICTIONS AND SENTENCES VACATED.

. Charges against a third defendant were dismissed.

. Lysergic Acid Diethylmide.